JUDGE RAKOFF

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Diana E. Rubio,

    Plaintiff,

-against-

Barnes & Noble, Inc., and

Fashion Institute of Technology,

    Defendants.

---

**14 CV 6561**

Case No._____
ECF case

COMPLAINT AND
DEMAND FOR
JURY TRIAL

RECEIVED
AUG 15 2014
U.S.D.C. S.D.N.Y.
CASHIERS

---

    Plaintiff Diana E. Rubio, by and through her legal counsel, for her complaint against defendants Barnes & Noble, Inc., and Fashion Institute of Technology, alleges upon knowledge with respect to her own acts and upon information and belief as to all other matters herein as follows:

## THE PARTIES

    1.    Plaintiff Diana E. Rubio (hereinafter "Diana") is a natural person and United States citizen residing at 559 Jefferson Street, Carlstadt, New Jersey 07072.

    2.    Defendant Barnes & Noble, Inc. (hereinafter "BN") is a Delaware corporation having its principal place of business at 122 Fifth Avenue, New York, New York 10011. BN is registered with the Department of State of New York and authorized to transact business in the state of New York as a foreign corporation. BN is a publicly traded company whose common stock is listed on the New York Stock Exchange (NYSE) under the trading symbol BKS. According to BN's own website it is a "Fortune 500 company" and the "leading retailer of content, digital media and educational products… [It] operate[s] nearly 700 Barnes & Noble

bookstores in 50 states, and one of the Web's largest e-commerce sites, BN.com (www.bn.com)." BN is a conglomerate that owns, controls and operates a number of subsidiaries and/or affiliated entities.

3. Defendant Fashion Institute of Technology (hereinafter "FIT") is an academic institution of higher education located at 227 West 27th Street, New York, New York 10001. FIT operates under the aegis of the State University of New York. According to its own website, it is New York City's "internationally recognized college for design, fashion, art, communications, and business."

JURISDICTION AND VENUE

4. This action arises under the federal Copyright Act of 1976 as amended, 17 U.S.C. §§ 101 et seq., as well as under the federal Lanham Act of 1946 as amended, 15 U.S.C. §§ 1051 et seq., especially 15 U.S.C. §1125(a). This action also arises under state statutory law namely New York Civil Rights Law (Chapter 6 of New York's Consolidated Laws), in particular Article 5 - Right of Privacy (§§ 50-52), as well as under New York state common law. This Court has federal question jurisdiction of the copyright claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has federal question jurisdiction of the Lanham Act claims asserted herein pursuant to 28 U.S.C. §§ 1331, 1337 and 1338, and 15 U.S.C. § 1121. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims, both statutory and common law, brought herein. In the alternative, this Court has diversity jurisdiction over all the claims herein pursuant to 28 U.S.C. § 1332 since plaintiff is a New Jersey citizen, both defendants are New York citizens and -although damages cannot be stated with precision at this

time- plaintiff's good faith estimate is that the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

5. This Court has *in personam* jurisdiction over defendants because defendants are residents of the State; also because defendants: (a) regularly transact or solicit business, or engage in other persistent course of conduct, or derive substantial revenue from goods used or consumed or licensed for use within the State; and/or (b) expect or should reasonably expect their acts to have consequences in the State and derive substantial revenue from commerce within the State; finally because defendants have committed the tortious acts specified herein within the State.

6. Venue is proper in this Court regarding the copyright claims herein under 28 U.S.C. § 1400(a), since this is an action relating to copyrights and defendants reside in this judicial district. Also, venue is proper in this Court regarding all claims herein, in view of 28 U.S.C. §§ 1391(b)(1) and (b)(2), because all defendants are residents of New York State and of this judicial district and because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

BACKGROUND

7. Diana repeats and realleges each and every allegation comprised in paragraphs 1-6 above, with the same force and effect as if specifically pleaded herein.

8. Diana was a student at FIT from 2010 to 2011 studying Accessory Design. She graduated in 2011 with an Associate Degree in Accessory Design. One of the courses she took at FIT was Accessory Drawing.

9. In or around the fall of 2010, Diana was attending a class in her accessory drawing course, when other FIT faculty and/or administration staff walked in her classroom and

3

announced that each FIT student taking that course would have to submit a drawing for 30% of the grade. That announcement was made orally; nothing was handed out in writing.

10. Subsequently FIT faculty announced, again orally, to the students, including Diana, in very broad and vague terms that FIT had actually entered into a so-called Back-To-Campus collaboration with defendant BN for items designed by students for students and that as part of that collaboration any drawing submitted in the above course would automatically enter into some form of student contest administered by FIT in concert with BN, wherein BN would ultimately choose the best drawing in its discretion.

11. FIT never explained to its students, including Diana, the terms of its collaboration with BN or the exact terms of the student contest, such as what the prize would be or whether any other or further future involvement in the aforementioned collaboration would be asked of the students after they had submitted their drawings or what their legal rights and obligations would be regarding such submissions.

12. Diana, a 29-year old FIT student at the time, independently created her own original drawing of a backpack which she named "The Everything Backpack" and which she submitted in or around the fall of 2010 (hereinafter "her Drawing" or "the Drawing"). A true and correct copy of the Drawing is attached and incorporated herein as **Exhibit A**.

13. In a letter dated December 9, 2010, BN thanked Diana "for participating in the Back-To-Campus collaboration between FIT and Barnes & Noble." A true and correct copy of said letter is attached and incorporated herein as **Exhibit B.**

14. A couple of months later FIT unofficially communicated to Diana that her Drawing had won the aforementioned student competition.

15.	Other than that communication, Diana received no explanation or clarification from FIT (or BN for that matter) as to whether she was going to receive some kind of award and/or payment for her Drawing or what the next steps in the process would be, despite her repeated inquiries to FIT.

16.	In fact, FIT represented to Diana that BN was not telling them much either. Indicative of such communications is the email that Diana sent to FIT faculty member Ms. Ellen Lynch on March 25, 2011, a true and correct copy of which is attached and incorporated herein as **Exhibit C.**

17.	In a letter dated May 11, 2011, BN officially congratulated Diana and announced to her that her Drawing had been "selected by Barnes & Noble, Inc., for production", further adding that "[her Drawing] will represent F.I.T., Fashion Institute of Technology, State University New York, and will be sold throughout the country in Barnes & Noble stores and on BN.com as a featured part of the 2011 Back-To-Campus Design by Students for Students collection." A true and correct copy of that letter is attached and incorporated herein as **Exhibit D.**

18.	When BN sent the aforementioned letter, there had been no prior agreements, understandings or even discussions between Diana, BN and/or FIT, regarding obtaining Diana's authorization for the use of her Drawing for production, or with respect to any terms -including any payment to Diana- of any potential use of her Drawing, the duration and extent of any such use, any form of attribution or other form of credit to Diana for her Drawing, or any other relevant aspects thereof. And there were no relevant agreements, understandings, or discussions between Diana, BN and/or FIT following that letter. Diana never gave her authorization or

discussed any terms with BN and/or FIT and all her subsequent inquiries to FIT regarding the meaning and purpose of that letter went unanswered.

19. A couple of months later, specifically on September 7, 2011 i.e. almost a year after Diana had entered the student competition with her Drawing and officially won, the Chairman of the FIT Accessories Design Department, Mr. Vasilios Christofilakos, sent Diana an email asking her to sign and date and return to him what he described as "the rights and consent" form attached to his email. He further added that "[o]nce that's done [i.e. Diana's execution of the attached form] all the paperwork is perfectly in order with the college, you and B&N." A true and correct copy of that email is attached and incorporated herein as **Exhibit E.** Mr. Christofilakos did not explain in that email or in another email or by any other means what it was exactly that he was asking Diana to sign.

20. Such so-called rights and consent form that Diana was asked to sign, was described by FIT's Mr. Christofilakos in his aforementioned email in a way that made it appear like a rather innocent-sounding and routine formality, but it actually was a complicated legal document containing assignment clauses and waivers of rights, a true and correct copy of which is attached and incorporated herein as **Exhibit F.** That document, which Diana never signed, provided for the following:

a) Diana would assign to FIT the entirety of her rights to the Drawing in perpetuity in exchange for "[no] money or other payment from any source", i.e. effectively in exchange for absolutely nothing;

b) Diana would acknowledge that FIT, having been assigned all rights therein, planned to license her Drawing to BN so BN could sell products incorporating her Drawing [called

6

"Licensed Products" in the document itself] at BN's retail locations, for which FIT alone would receive "royalties, a percentage of sales [sic]";

c) Diana would waive any privacy rights in her Drawing authorizing FIT to show it to BN;

d) Diana would consent to the "use by Barnes & Noble and FIT of [her] name as designer of those Licensed Products that [she] designed and the use of [her] name, photograph, portrait and pertinent biographical data which [she] may provide for advertising and purposes of trade connected with the Licensed Products";

e) In return, BN would give Diana only "design credit on the hangtag" and FIT would only allow Diana to use reproductions of her Drawing for "limited noncommercial educational and scholarly purposes to show [her] accomplishments, skill or background."

21.     FIT has Contests and Special Projects Guidelines in place, which it has published on its own website at http://www.fitnyc.edu/3508.asp. One of those guidelines under the subsection "Property Rights" states that "[i]t is FIT's policy that students maintain ownership of their work prepared in connection with a contest or special project." Further on in the same subsection, FIT quotes the National Association of Colleges of Art and Design guidelines to which FIT subscribes: "[t]he competition must not exploit the participant. Work [sic] submitted, including reproduction rights, must remain the property of the participant unless purchased at professional rates independently of prizes and awards. An exception to this may be made when prizes, in amounts equaling or exceeding professional rates, are stipulated as purchase prizes." A true and correct screenshot of these guidelines is attached and incorporated herein as **Exhibit G.** Thus, in addition to everything else, the document that Diana was asked to

7

sign was also in complete contrast with the letter and spirit of the national as well as FIT's own guidelines regarding student contests.

22. **Diana never signed that so-called rights and consent form or in fact any other documents to that effect.**

23. Unbeknownst to Diana at the time, BN and/or FIT used the Drawing without Diana's permission and BN manufactured without her permission unauthorized backpacks that were based upon her Drawing (hereinafter "Diana Rubio Backpacks"), which BN marketed and sold without permission at its brick-and-mortar and online retail stores.

24. Each Diana Rubio Backpack had and still has a hangtag attached to it that reads as follows:

> "Backpack
> **FIT Fashion Institute of Technology**
> State University of New York
> **Diana Rubio,** AAS Accessories Design 2011" [Emphasis in original]

Directly beneath this wording in each hangtag there is an 8-line promotional blurb about FIT and at the very end, FIT's own website URL. A true and correct copy of a digital photograph of such a hangtag is attached and incorporated herein as **Exhibit H**.

25. Similarly, on BN's online retail store, Diana Rubio Backpacks were and are still offered for sale accompanied by the following descriptions:

> "[Acorn] / [Olive Green] Canvas Backpack with Double Leather Look Handles (16 x 6 x 12) by Fashion Institute of Technology-SUNY for Barnes & Noble
> Overview - This canvas backpack is designed by F.I.T. student, Diana Rubio, exclusively for Barnes & Noble!"

True and correct screenshots of such Diana Rubio Backpacks offered for sale on BN's online retail store in 2013 and 2014 are attached and incorporated herein as **Exhibit I.**

26. Diana has received no payment whatsoever from BN and/or FIT for the Diana Rubio Backpacks nor has she authorized the manufacture, marketing, and sale of such backpacks.

27. Diana has never authorized the uses of her name by BN and/or FIT as set forth above nor has she received any payment whatsoever by BN or FIT for such uses.

28. Exactly when BN and FIT commenced to engage in the unauthorized activities set froth above is unclear at present but it is clear that they never ceased and in fact are still doing so. BN has been selling Diana Rubio Backpacks across the U.S., perhaps even worldwide. *See for example* true and correct copies of digital photographs of the Diana Rubio Backpacks as offered for sale at BN brick-and-mortar stores in Clifton, NJ in November 2013, New York, NY (350 Fifth Avenue) in June 2014, Atlanta, GA in July 2014; *see also* true and correct copies of screenshots of the Diana Rubio Backpacks as offered for sale at the online BN store in November 2013 and August 2014. All said copies and screenshots are attached and incorporated herein as **Subparts J1 through J5 of Exhibit J.**

29. The Diana Rubio Backpacks sell for at least $39.95 each (not including sales tax) and have proven to be quite popular, especially with the younger population, with an average consumer rating of 4.5 out of 5 stars at BN's online store. *See* true and correct copies of screenshots from BN's own online store, attached and incorporated herein as **Exhibit K.**

30. It is unclear whether FIT has been receiving royalties or other forms of payment from BN for every Diana Rubio Backpack sold.

31. The unauthorized use of Diana's name as set forth above has helped BN market and advertise itself and its products to the younger and/or college population demographic.

32.     FIT has been promoting and advertising itself to prospective students by and through the Diana Rubio Backpacks as set forth above.

33.     Diana first became aware of defendants' infringing activities several months after she'd received BN's congratulatory letter (Exhibit D). When she found out, she complained repeatedly to FIT staff about such infringing activities, but remained hopeful that she'd be able to reach an amicable solution with defendants, engage in a true collaboration with them and agree with them, amongst other things, to some form of royalty or other payment.

34.     Eventually Diana's patience and optimism ran out and she retained the services of legal counsel (not her present counsel) who sent a cease and desist letter to BN in June 2013, with a carbon copy to FIT. In that letter, Diana through her prior counsel, put defendants on actual notice of their infringing activities, asked them to cease and desist from such activities and further noted that she would "entertain any reasonable and fair settlement, as well as a mutually beneficial licensing agreement." A true and correct copy of that letter is attached and incorporated herein as **Exhibit L.**

35.     BN responded orally with an unreasonably low settlement offer to which Diana replied by inquiring of BN's volume of sales of Diana Rubio Backpacks, but BN refused to provide her with such information and still refuses to this day.

AS AND FOR A FIRST CAUSE OF ACTION

INFRINGEMENT OF DIANA'S COPYRIGHT

36.     Diana repeats and realleges each and every allegation comprised in paragraphs 1-35 above, with the same force and effect as if specifically pleaded herein.

37.     Diana, by her legal counsel, has duly registered her copyright to the Drawing with the United States Copyright Office (Registration Number VA 1-902-730, effective date

November 27, 2013), in accordance with 17 U.S.C. §§ 410 and 411. A true and correct copy of the certificate of registration is attached hereto as **Exhibit M.**

38.     Pursuant to 17 U.S.C. § 410 the certificate of registration constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate.

39.     Diana is the sole proprietor of all rights, title, and interest in and to the copyright of the Drawing.

40.     BN had obvious and unquestionable access to the Drawing as set forth above and as BN itself admits (*see* Exhibits B and D).

41.     BN reproduced without Diana's permission the Drawing and prepared unauthorized derivative works, namely the Diana Rubio Backpacks, based upon the Drawing.

42.     BN itself admits that the Diana Rubio Backpacks were based on the Drawing as evidenced by Exhibits H, I and J.

43.     BN distributed to the general public without Diana's permission the unauthorized derivative works and profited therefrom and has been doing so to this day.

44.     BN has not remitted any form of payment and it has not provided any form of accounting to Diana for its unauthorized uses above.

45.     By its actions above BN has infringed and is still infringing Diana's copyright in the Drawing in violation of the federal Copyright Act of 1976 as amended, codified at 17 U.S.C. §§ 101 et seq.

45.     BN has been willfully infringing Diana's copyright since it knew or should have known that Diana refused to sign and in fact never signed the form in Exhibit F. Furthermore, Diana by and through her prior counsel's cease and desist letter (*see* Exhibit L) put BN on actual notice of its infringing activities.

46. FIT as set forth above either has been acting in concert with BN in infringing Diana's copyright and/or bears secondary liability for BN's infringement of Diana's copyright.

47. FIT has not remitted any form of payment and it has not provided any form of accounting to Diana for its unauthorized uses above.

48. FIT's actions were also willful, since it knew that Diana refused to sign and in fact never signed the form in Exhibit F. Furthermore, FIT was copied on Diana's former counsel's cease and desist letter (Exhibit L) and it was thus also put on actual notice.

## AS AND FOR A SECOND CAUSE OF ACTION

## INFRINGEMENT OF DIANA'S RIGHT OF PRIVACY

49. Diana repeats and realleges each and every allegation comprised in paragraphs 1-48 above, with the same force and effect as if specifically pleaded herein.

50. Both defendants as set forth above used for advertising purposes and/or purposes of trade Diana's name (*see* Exhibits H, I, J), within and without the State of New York without having first obtained her written consent.

51. Both defendants did so knowingly as set forth above.

52. Neither defendant remitted any form of payment to Diana for such use or provided Diana with any form of accounting related to such use.

53. In doing so, defendants violated Diana's right of privacy as prescribed in Article 5 (§§ 50-52) of the New York Civil Rights Law (codified as Chapter 6 of New York's Consolidated Laws).

AS AND FOR A THIRD CAUSE OF ACTION

UNJUST ENRICHMENT

54. Diana repeats and realleges each and every allegation comprised in paragraphs 1-53 above, with the same force and effect as if specifically pleaded herein.

55. As set forth above defendants have been selling infringing backpacks worldwide without payment and without permission, and have been advertising those products and themselves (in the case of FIT) by using Diana's name without payment and without permission.

56. Defendants, a conglomerate and a prominent college, have thus enriched themselves willfully and unjustly at the expense of Diana, a young, creative college student at the time, and a struggling young entrepreneur at present.

57. Diana and the defendants are not in privity in the case at bar, but defendants were well aware of Diana and her Drawing and her refusal to sign away her rights. Evenmore, defendants and Diana share a connection that is not too attenuated for unjust enrichment purposes.

58. Given the fact pattern above, it would be against equity and good conscience to permit defendants to retain what is sought to be recovered by Diana in the action at bar.

59. The theory of unjust enrichment is deeply and firmly rooted in New York common law as contemplating an obligation imposed by equity to prevent injustice in the absence of an actual agreement between the parties. *See Philips International Investments, LLC v. Pektor*, 117 AD3d 1 (1st Dept 2014) [Internal quotations omitted].

AS AND FOR A FOURTH CAUSE OF ACTION

VIOLATION OF SECTION 43(a)(1)(A) OF THE LANHAM ACT

60. Diana repeats and realleges each and every allegation comprised in paragraphs 1-59 above, with the same force and effect as if specifically pleaded herein.

61. Defendants have been using without permission and without payment, in interstate commerce, in connection with the Diana Rubio Backpacks, Diana's name, as well as the false and misleading representation of fact that the backpacks were allegedly "designed by F.I.T. student, Diana Rubio, exclusively for Barnes & Noble!"

62. Defendants' actions are likely to cause confusion, mistake or to deceive as to the affiliation, connection, or association of defendants with Diana and/or as to Diana's approval of the use of her name and sale and marketing of the Diana Rubio Backpacks by defendants.

63. Evenmore defendants' actions are willful.

64. Diana having recently graduated from FIT is now a young, aspiring entrepreneur and fashion designer who, while holding a day job as a skincare professional, has been in the process of designing and launching her own fashion accessories since at least 2011.

65. Defendants' actions are and will be proximately causing Diana to suffer an injury to her commercial interests to business reputation and present and future sales.

66. Defendants' actions are in violation of § 43(a)(1)(A) of the federal Lanham Act of 1946 as amended, codified at 15 U.S.C. § 1125(a)(1)(A).

## AS AND FOR A FIFTH CAUSE OF ACTION

### VIOLATION OF SECTION 43(a)(1)(B) OF THE LANHAM ACT

67. Diana repeats and realleges each and every allegation comprised in paragraphs 1-66 above, with the same force and effect as if specifically pleaded herein.

68. Defendants' actions misrepresent in commercial advertising or promotion, the nature and characteristics of the Diana Rubio Backpacks as having allegedly been designed exclusively for BN by Diana under the auspices of FIT.

69. Defendants' actions are and will be proximately causing Diana to suffer an injury to her commercial interests to business reputation and present and future sales.

70. Defendants' actions are in violation of § 43(a)(1)(B) of the federal Lanham Act of 1946 as amended, codified at 15 U.S.C. § 1125(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in her favor against defendants and grant the following relief:

A. A judgment that defendant BN has directly infringed upon plaintiff's copyrights and has done so willfully;

B. A judgment that defendant FIT has directly infringed in concert with defendant BN upon plaintiff's copyrights and has done so willfully; and/or that defendant FIT has engaged in secondary infringement upon plaintiff's copyrights and has done so willfully;

C. A judgment that defendants have knowingly violated plaintiff's New York Right of Privacy;

D. A judgment that defendants have unjustly enriched themselves at the expense of

plaintiff;

E.     A judgment that defendants have violated § 43(a)(1)(A) of the federal Lanham Act of 1946 as amended, codified at 15 U.S.C. § 1125(a)(1)(A), and/or § 43(a)(1)(B) of the federal Lanham Act of 1946 as amended, codified at 15 U.S.C. § 1125(a)(1)(B), proximately causing plaintiff to suffer an injury to her commercial interests to business reputation and present and future sales;

F.     An order compelling each defendant to promptly and fully account to plaintiff for the volume of sales of Diana Rubio Backpacks and all gains, profits and benefits derived from its infringement of plaintiff's rights in this matter;

G.     A judgment awarding plaintiff actual damages, defendants' profits, pre-judgment and post-judgment interest, and the costs of this action, the amount of which to be determined at trial;

H.     A judgment awarding plaintiff treble and/or exemplary and/or punitive damages, as well as reasonable attorney's fees, in view of defendants' willful commission of their acts, the amount of which to be determined at trial;

I.     An order compelling defendants to remit to plaintiff a <u>continuing royalty</u> at a rate to be set by the Court for each future sale of Diana Rubio Backpacks. In the alternative, because defendants have been continuing and will continue to engage in the acts complained of herein unless restrained and enjoined, all to plaintiff's irreparable damage; because it would be difficult to ascertain the amount of compensation, which could afford plaintiff adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required; because plaintiff's remedy at law is not adequate to compensate it for the injuries threatened, a <u>permanent injunction</u> is hereby requested enjoining defendants, their officers, agents, servants, employees, attorneys,

and any persons in active concert or participation with them, from making, marketing, and/or selling unauthorized derivative works based on plaintiff's Drawing, from using plaintiff's name without permission for purposes of trade or advertising, and from any other and further acts that violate plaintiff's rights as set forth herein;

J.  Such other and further relief as this Court may deem just and proper.

<u>A jury trial is hereby respectfully demanded.</u>

August 15, 2014

Respectfully submitted,

*Moscholeas*

Dimitrios Moscholeas, Esq. (DM1976)
1501 Broadway, 12th Floor
New York, NY 10036
Tel.: (917) 720-6868
Fax: (917) 591-4277
Email: dm@moscholeaslaw.com

Legal counsel for Plaintiff Diana E. Rubio